IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

VIVIANNE JADE WASHINGTON,    )
                              )
        Plaintiff,            )        CIVIL ACTION FILE
                              )        NO. 3:18-cv-00086-TCB
v.                            )
                              )
INVESTIGATOR JASON DURAND,    )
in his individual capacity,   )
INVESTIGATOR HUGH HOWARD,     )
in his individual capacity,   )
                              )
        Defendants.           )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendants Jason Durand ("Durand") and Hugh Howard ("Howard") and, pursuant to Local Rules 56 and 7.1, file this Memorandum of Law in Support of their Motion for Summary Judgment.

## PROCEDURAL POSTURE

Plaintiff Vivianne Jade Washington ("Plaintiff") filed this suit for damages under 42 § 1983 for alleged violation of her Fourth Amendment rights and for violation of Georgia law.  Doc. 1, p. 1.  Plaintiff alleges she was arrested based upon a facially invalid warrant without any investigation or probable case.  Id. at p. 2. Plaintiff then alleges she was imprisoned, denied contact with the outside world, and

- 1 -

interrogated to extract a confession.  Id.  Plaintiff alleges she suffered significant emotional pain and suffering because of the allegedly false arrest.  Id.  Defendants, as set forth below, show that probable cause existed to arrest Plaintiff, that Plaintiff confessed to being a party to a crime at least twice, and that she was immediately released from custody when the facts became clear that she was not involved in the underlying crime.  As such, Defendants' motion should be granted.

## FACTS

In August 2016, Sgt. Jason Durand ("Durand") with the Meriwether County Sheriff's Office was assigned to investigate a home invasion where an elderly woman, now known to be Ms. Dorothy Dow, the proprietor of a Meriwether County blueberry farm, had been set on fire after a home invasion and burglary (hereinafter also referred to as "the Dow crime").  Howard depo., p. 13, ll. 8-18.  Durand contacted his Lieutenant, Hugh Howard ("Howard"), and asked Howard to apply for a search warrant for Ms. Dow's residence.  Howard depo., p. 16, ll. 15-24.  That warrant was presented to Judge Shirlene (neé Brown) Lowery (hereinafter "Judge Lowery") in person by Howard; Judge Lowery confirmed probable cause and issued the search warrant.  Id. at p. 16, l. 25-p. 16, l. 9.  Howard then met the Georgia Bureau of Investigations ("GBI") crime scene investigators at the courthouse and travelled with them to the scene where Durand was waiting.  Id. at p. 18, ll. 23-25.

While the GBI and Durand secured and processed the crime scene, Howard went back to the sheriff's office to interview witnesses.  Id. at p. 22, ll. 1-3.  During the investigation, Howard received a phone call from an employee of Ms. Dow's farm, Leonard Buchanan, who directed Howard to interview Cortavious Heard ("Heard"), another employee of Ms. Dow, about the Dow crime.  Id. at p. 26, ll. 10-16.  Howard learned that Heard was on probation and he was contacted and came to the Sheriff's Office but denied any knowledge of the Dow crime.  Id. at p. 27, ll. 3-5.  After his denial, Howard contacted Heard's probation officers and requested that a search be conducted of Heard's residence per his Fourth Amendment probation waiver.  Id. at 7-10.

The probation officer conducted an initial search of Heard himself and found marijuana.  Id. at 10-12.  While Howard spoke with Heard, the team at Heard's residence found multiple items belonging to Ms. Dow. Id. at 14-19.  At that point, Heard's grandmother spoke with Heard and convinced him to confess.  Id. at 18-21.  Heard was placed under arrest for possession of marijuana and taken to the jail to be further questioned regarding the Dow crime.  Id. at 22-25.

At the jail, Heard was interviewed and said it was Justin Grady ("Grady"), "a butch African American female in a black hat," and an unidentified black male who conducted the home invasion with him.  Id. at p. 37, ll. 13-24.  The investigative

- 3 -

team, including Howard and Durand, then spoke with numerous agencies regarding the evidence provided about Heard and Grady. <u>Id.</u> at p. 41, ll. 7-13. While Howard was questioning Heard, Lt. Chris Warden, the narcotics officer for the sheriff's office, received a phone call from Victor McPhie ("McPhie"), a narcotics officer with the Newnan Police Department in Newnan, Georgia, who relayed he had information from his confidential informant ("CI") that included a picture of a woman named Vivienne Washington who was involved in the Dow crime. <u>Id.</u> at 17-23.

Howard received the photograph from Warden, brought it to Heard, and asked if it was anyone he recognized. <u>Id.</u> at p. 42, ll. 1-3. Heard said that the woman in the photograph, who we now know was Plaintiff, was with him during the Dow crime and that she was wearing the same black hat he described earlier. <u>Id.</u> at 3-6. After that statement, Howard learned from McPhie that the woman in the photograph was Plaintiff, that she worked at a pizza place in Newnan, and that she went to high school with Angel Harmon and Mina Ellery—the two females who have now been convicted of participating in the Dow crime. <u>Id.</u> at p. 42, l. 22-p. 43, l. 3.

Based on this information, Howard spoke with Durand and then went through the process of obtaining an arrest warrant for Plaintiff, which Durand was to present to Judge Lowery. Durand depo., p. 21, ll. 3-11. Durand did not prepare any

documents prior to seeking the warrant; instead, he went to the courthouse and orally testified as to the evidence known to the sheriff's office related to Plaintiff's involvement in the Dow crime based upon his conversations with Howard. Id. at p. 22, l. 6-p. 23, l. 12. The arrest warrant was executed by Judge Lowery. See Arrest Warrant, included in Certified Sheriff's Office records, attached hereto as Exhibit 1, p. 1. In Meriwether County, arrest warrant applications are always done orally by testifying to a Magistrate Judge of Meriwether County, who then types out the warrant based on the testimony of the officer. Howard depo., p. 17, l. 16-p. 18, l. 16.

In the late afternoon of August 8, 2016, Newnan Police arrived at Plaintiff's place of employment, Pie Five Pizza. Plaintiff's Depo., p. 15, l. 23-p. 16, l. 5; p. 17, ll. 5-8. Plaintiff was booked at 6:33 p.m. See Booking Report, Ex. 1. Before her booking, Howard offered Plaintiff a polygraph test. Howard depo., p. 49, ll. 18-20. In her complaint, Plaintiff alleges that she was then walked by Heard, who was housed in a cell with Justin Grady, another suspect in the Dow crime. Doc. 1, ¶ 33. Plaintiff also alleged that both Heard and Grady informed Howard that Plaintiff was not the "correct girl" involved in the Dow crime. Id. at ¶ 34-35. However, at deposition, Plaintiff testified she was taken past Heard's cell and Heard alone was asked if Plaintiff was a person involved in the crime on the farm. Plaintiff depo. at

p. 28, ll. 12-20.  Plaintiff cannot recall what Heard was wearing and had never seen him before in her "entire life" but is sure Heard was housed in a cell with an older man she could not identify.  Id. at p. 29, ll. 2-12.

Contrary to Plaintiff's memory, Heard was housed alone at the jail in an observation/isolation cell.  Howard depo., p. 46, ll. 22-25; p. 47, ll. 14-15; Ex. 1, Inmate Activity Report of Heard (showing Heard was housed in Isolation Cell 2 from 8/8/16 until 8/10/16).  Grady, meanwhile, was housed in Booking.  See Ex. 1, Inmate Activity Report of Grady (showing Grady was housed in either Booking Cell 1, 2, or General Population from 8/8/16 until his release to the Department of Corrections).  Heard positively identified Plaintiff in the Dow crime by saying "that is the bitch I told you about" when Plaintiff was walked by his observation cell.  Howard depo., p. 49, ll. 1-6.

Plaintiff was booked on an investigative hold.  Id. at p. 80, ll. 4-8. Because of that hold, she would not be allowed phone calls, visitors, or interactions with other detainees.  Id. at ll. 9-13.  The investigative hold is limited to 72 hours, after which Plaintiff would be released.  Id. at p. 57, ll. 8-12; p. 80, ll. 4-24.

- 6 -

Within the hour after being booked, Plaintiff was questioned by Howard.  Id. at p. 31, ll. 2-5.[1] During that questioning, Plaintiff was shown photographs of Heard and the other persons believed to be involved in the Dow crime.  Howard depo. at p. 31, ll. 2-11.  Plaintiff admitted that she was related to the suspects during that conversation.  Washington depo. at p. 32, ll. 13-19.  Plaintiff was not coerced in any way to say that she knew Heard and the other suspected assailants involved in the Dow crime.  Id. at p. 33, ll. 7-9. After that untruthful confession, Plaintiff was driven to LaGrange, Georgia, for a polygraph test.  Id. at ll. 16-20.

In LaGrange, Plaintiff was met by a polygrapher (not either Defendant), hooked up to a "machine," told instructions, and felt generally comfortable.  Id. at p. 35, l. 17- p. 36, l. 13.  Plaintiff failed the polygraph test.  See Polygraph Documents, Ex. 1. Then, after already confessing that she knew Heard and other suspected assailants, Plaintiff **_admitted_** to being involved in the Dow crime.  Id. at p. 36, ll. 14-15; Exhibit 2, Polygraph Video of Plaintiff, 2:26 ("I was there.").

---

[1] This interview actually likely took place within minutes of Plaintiff's booking. Plaintiff was booked at 6:33 p.m. See booking report.  Plaintiff believes it was about an hour before she was taken to LaGrange for a polygraph test.  Plaintiff depo., p. 33, ll. 12-20. At 9:17 p.m., Plaintiff was in LaGrange, Georgia, and signing documents to take a polygraph test.  See Polygraph Documents.  Plaintiff also, erroneously, claims that within that time period, she was alone in her cell for "a couple of hours."  Plaintiff depo., p. 32, ll. 1-3.  Obviously, Plaintiff remembers her time in jail quite differently than the reality of the situation.

Plaintiff then began making up details about her involvement and relaying them to Howard.  Washington depo. at ll. 24-25.  She told him she got into a car with three strange men and met up at the park with the other Dow assailants.  Id. at p. 37, ll. 1-2, Ex. 2 at 5:20.

Plaintiff was not actually involved in the Dow crime.  Plaintiff testified that she believes Howard believed her story up until he realized she was lying during their conversation after the polygraph.  Id. at p. 37, ll. 3-10.  Based on the realization that Plaintiff's version of the facts were inconsistent with other evidence, Howard interviewed Heard again who confessed he lied about Plaintiff being involved.  Howard depo., p. 68, l. 20-p. 69, l. 3.

Because he recanted his story, Heard was taken to the same polygrapher.  Id. at p. 69, ll. 9-17.  Heard passed the polygraph (noting Plaintiff was not involved in the Dow crime), and Plaintiff was immediately released by contacting Judge Lowery, cancelling the warrant, and transporting Plaintiff back to her residence.  Id. at ll. 21-23; see also Heard Polygraph Results, Ex. 1.  Heard was charged with making false statements because of his lie that Plaintiff was involved in the Dow murder.  Id. at  p. 85, ll. 16-24.

## ARGUMENT AND CITATION OF AUTHORITY

**I.     Standard on Motion for Summary Judgment.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Burger King Corp. v. E-Z Eating, 41 Corp., 572 F.3d 1306, 1313 (11th Cir. 2009). If the moving party succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to show the existence of a genuine issue of fact. Id. (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir.1993)). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

The nonmoving party does not "satisfy its burden if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting Anderson, 477 U.S. at 249–50). Instead, "the plain language of Rule 56[ ] mandates the entry of summary judgment[ ] ... against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

## II.   **Defendants are entitled to qualified immunity.**

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018). "[Q]ualified immunity will be denied only if the preexisting law by case law or otherwise makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Id. at 1297 (quotation and alteration omitted).

To overcome that immunity, Plaintiff must show that (1) taken in the light most favorable to Plaintiff, the facts show that the defendants' conduct violated a constitutional right, and (2) the right was clearly established at the time of the defendants' alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001).

Plaintiff alleges she was arrested without any probable cause. Doc. 1, p. 2. "Probable cause exists where the facts within the collective knowledge of law

- 10 -

enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Gates, F.3d at 1298. "Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." Id. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest.'" Id. (alteration omitted). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010).  Plaintiff was brought in by Newnan Police under O.C.G.A. § 16-7-1, felony burglary, and questioned by the Meriwether Sheriff's Office related to the facts known to Defendants regarding the Dow crime. See generally, Plaintiff's depo., Howard depo., Arrest Warrant.

**a. There was at least arguable probable cause to effect Plaintiff's arrest.**

In determining whether probable cause, or arguable probable cause, exists an officer is to look at "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).  Furthermore, "[a]rguable probable cause does

not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest." Scarbrough v. Myles, 245 F.3d 1299, 1302-1303 (2001). While an officer may not turn a blind eye to evidence and only selectively investigate, "a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004) (internal quotations and citation omitted). "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979).

An officer is only stripped of his qualified immunity when "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley, 475 U.S. at 341. Even more narrow, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Id. at 344-45.

The Malley Court agreed that the magistrate's decision in finding probable cause is afforded weight—"It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but

within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable."[2]  Id. at 346.  The Eleventh Circuit has long given weight to a judge's action with regard to warrants.  Barts v. Joyner, 865 F.2d 1187, 1193-94 (11th Cir. 1989) (If a judge's opinion "was within the range of professional competence (that is, was not an unacceptable error indicating 'gross incompetence or neglect of duty'), the police officer defendants ought not be held liable.") (quoting Malley, 475 U.S. at 346).

Here, Judge Lowery heard Durand's testimony and Judge Lowery herself typed and signed the warrant based on the facts presented to her.  Durand depo., p. 22, l. 10-p. 24, l.6.  During that testimony, Durand provided information related to the C.I.'s identification of Plaintiff.  Id.  Therefore, not only was Plaintiff identified by Heard, that identification was corroborated by the C.I.

The Eleventh Circuit has held that, "where unsavory information relating to the background of an informant was omitted from an affidavit, the warrant was still valid, due in part to the 'firsthand character' of the statements coupled with

---

[2] The Dissent in Malley emphasized that "**substantial** weight should be accorded the judge's finding of probable cause."  Id. at 346, 351 (citing United States v. Ventresca, 380 U.S. 102, 105-106 (1965); Chapman v. United States, 365 U.S. 610 (1961); Jones v. United States, 362 U.S. 257, 270 (1960); Johnson v. United States, 333 U.S. 10 (1948)) (emphasis added).

independent corroboration of the information by another person."   Madiwale v. Savaiko, 117 F.3d 1321, 1327(1997) (citing United States v. Haimowitz, 706 F.2d 1549, 1557 (11ᵗʰ Cir. 1983), cert. denied, 464 U.S. 1069 (1984)). To determine whether probable cause exists to issue a search warrant, the magistrate judge makes "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 981-82 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The "totality-of-the-circumstances analysis ... permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip."  Id. at 982 (citing Gates, 462 U.S. at 234).

The information relevant to determining whether Defendants had arguable probable cause is the information known to Defendants at the time of the arrest and not the facts "known to the plaintiff then or those known to a court later." Jones v. Cannon, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999). In fact, a finding of probable cause only requires reasonably trustworthy information. Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996).  Here, McPhie confirmed the reliability of the C.I. by noting that they had been used in the past and that the C.I. contacted McPhie without

being prompted.  McPhie depo., p. 13, ll. 5-17.  That reliable information was relayed by McPhie, a sworn officer, to Defendants.  As such, at least arguable probable cause existed to arrest Plaintiff.

### b. The investigation leading to and proceeding Plaintiff's arrest was reasonable.

In determining whether probable cause, or arguable probable cause, exists an officer is to look at "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).  Furthermore, "[a]rguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest."  Scarbrough v. Myles, 245 F.3d 1299, 1302-1303 (2001).  While an officer may not turn a blind eye to evidence and only selectively investigate, "a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  Kingsland v. City of Miami, 382 F.3d 1220, 1229 (2004) (internal quotations and citation omitted).  "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979).

In the present case, as set forth above, and given the severity of the crime, the investigation leading to Judge Lowery's determination that probable cause was

- 15 -

present was reasonable.  There is no post-arrest duty to investigate based upon a suspect's statements that they were not involved in the crime,  Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir. 2002), and "is not required...to resolve all inferences and all factual conflicts in favor of the suspect." Bailey v. Bd. of County Comm'rs, Alachua Cnty., Fla., 956 F.2d 1112, 1120 n.5 (11th Cir. 1992); see also Smith v. City of Fairburn, Ga., 679 Fed.Appx. 916, 922 (11th Cir. 2017) (an officer is not required to believe a suspect's protestations of innocence).

Here, Plaintiff was arrested based upon the investigation of a truly horrific murder.  During the investigation, Howard learned from both a C.I. and the prime suspect, Heard, that Washington was involved.  Specifically, Heard initially gave a description of a person involved and was later shown a photograph which he confirmed was the person—and that person was Plaintiff.  As Ms. Dow lay suffering and ultimately passing away, it was absolutely required of Defendants to take seriously all credible leads and follow them to their end in pursuit of justice for Ms. Dow and her family.  Despite Plaintiff twice admitting to being involved in the crime, Defendants, once they reasonably believed Plaintiff was innocent, dropped the charges, even as Plaintiff was stating she "was there" at the crime scene.  That Howard identified inconsistencies and used them to immediately eliminate Plaintiff

as a suspect only shows how diligent Defendants were in releasing Plaintiff, despite her admissions.

Even if Defendants were required to follow every lead given by Plaintiff, obtain all cell phone data from Plaintiff's phone, follow-up with every alibi witness, and all other tasks Plaintiff will likely ask the Court to require of Defendants, Plaintiff was still released within twenty-five hours of her initial booking.  See Booking Report, Ex. 1; Baker v. McCollan, 443 U.S. 137, 144-45, 99 S.Ct. 2689, 2694-95, 61 L.E.2d 433 (1979) (finding a 3-day deprivation of liberty resulting from mistaken identity did not give rise to a constitutional claim because the plaintiff was arrested and detained on a valid warrant).

### III.    Defendants are entitled to official immunity from Plaintiff's state law claims.

"Public agents are immune from liability for their discretionary acts unless they are done with malice or intent to injure." Watkins v. Latif, 323 Ga. App. 306, 309, 744 S.E.2d 860 (2013) (citing Taylor v. Waldo, 309 Ga. App. 108, 111, 709 S.E.2d 278 (2011)).  An officer undertaking an arrest is performing a discretionary act. Watkins, 323 Ga. App. at 311, 744 S.E.2d at 863. Even if the officer's investigation and decision to arrest were flawed, the officer's decisions remain discretionary. Id.  Because the act of arresting an arrestee is discretionary, the

plaintiff can overcome the defendant/officer's immunity defense only by showing that the officer acted with malice or intent to injure.  Id. (citing Cameron v. Lang, 274 Ga. 122, 123, 549 S.E.2d 341 (2001)).  An inference of malice is insufficient to overcome the officer's immunity defense.  Id.  In Watkins, because the act of arresting the plaintiff was discretionary, and no evidence established a question of fact regarding whether the officer acted with actual malice or an intent to injure, the trial court did not err in granting summary judgment to the officer.  Id.  In the case at bar, no allegation supports that either Defendant acted with malice or intent to injure; therefore, Defendants are immune from liability.

      1.  Malicious Prosecution.

O.C.G.A. § 51-7-40 provides, "A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action."  In Georgia, a plaintiff who claims malicious prosecution must show: (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation, or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff.  McCall v. Frisky Whisky, 587 Fed. Appx. 519, 520-21 (11th Cir. 2014) (citing Kelly v. Serna, 87 F.3d 1235, 1240-41 (11th Cir. 1996)).  Thus, to successfully prosecute a tort claim for malicious prosecution, "a

- 18 -

plaintiff must show that the defendant acted both without probable cause and maliciously." <u>Stephens v. Zimmerman</u>, 333 Ga. App. 586, 774 S.E.2d 811 (2015) (alterations omitted) (<u>quoting</u> <u>Anderson v. Cobb</u>, 258 Ga. App. 159, 160, 573 S.E.2d 417 (2002)).   In the present case, Plaintiff's allegations do not support that Defendants acted either without probable cause or maliciously.

        a.    <u>Probable Cause.</u>

Probable cause for the arrest is shown if the facts at the time the prosecution was initiated would lead a person of ordinary caution to entertain a belief that the accused was guilty of the charged offense.  <u>McCall</u>, 587 Fed. Appx. at 521 (<u>citing</u> <u>Wal–Mart Stores, Inc. v. Blackford</u>, 264 Ga. 612, 449 S.E.2d 293, 294 (1994)). The essential question is whether the defendant had reasonable cause to believe that the plaintiff was guilty of the alleged offense.  <u>Id.</u> (<u>citing</u> <u>McKissick v. Aydelott</u>, 307 Ga. App. 688, 705 S.E.2d 897, 902 (2011)).  Because the plaintiff must show that the defendant could have had no reasonable ground to initiate prosecution, the plaintiff's claim of malicious prosecution fails if some circumstances point to the plaintiff's guilt.  <u>Id.</u> (<u>citing</u> <u>Kelly</u>, 87 F.3d at 1241). Plaintiff's claim of malicious prosecution fails because of the arguments <u>supra</u>.

        b. <u>No Malice.</u>

In <u>Stephens</u>, the Georgia Court of Appeals provided:

> Malice is an element of malicious prosecution and may be inferred by a total lack of probable cause. Our initial inquiry, however, is not whether [the police officer] acted maliciously for purposes of the tort of malicious prosecution, but whether she acted with *actual* malice that would exempt her from official immunity. Official or qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. In Georgia, a public officer may be personally liable ... for discretionary acts performed with malice or an intent to injure.

Stephens, 333 Ga. App. at 591, 774 S.E.2d at 815-16 (citing Marshall v. Browning, 310 Ga. App. 64, 67, 712 S.E.2d 71 (2011)). The plaintiff argued that the defendant law enforcement officer should have investigated further before arresting him and should have questioned additional witnesses and suspects and that the officer made inconsistent, possibly untrue, statements. However, the court found that, without more, "such actions do not show a deliberate intent to commit a wrongful act or to harm [the plaintiff]." Id. at 592. The court found no evidence that the officer was motivated by personal malice toward the plaintiff. Id. Similarly, in the present case, no allegation supports personal malice by either defendant.

In fact, Washington does not even know who Durand is. Washington depo., p. 45, ll. 15-17. Regarding Howard, Washington believes the only thing he did wrong was that he was "too quick to jump at a lead." Id. at ll. 4-5. There are no

allegations of malice whatsoever.  As such, Defendants are entitled to official immunity.

### IV.    Plaintiff is not entitled to punitive damages under federal law.

Under federal law, although punitive damages may be awarded against government officials sued in their individual capacity, Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985), "the evidence must [show] that the defendant was motivated by an evil motive or intent, or there must be reckless or callous indifference to federally protected rights."  Anderson v. City of Atlanta, 778 F.2d 678, 688 (11th Cir. 1985).  As there is no allegation in the present case that Defendants were motivated by an evil motive or intent in any action toward Plaintiff or that they showed reckless or callous indifference to federally protected rights, Plainitff is not entitled to punitive damages under federal law.

### V.    Plaintiff is not entitled to attorney fees under 42 U.S.C. § 1988.

42 U.S.C. § 1988(b) provides, in pertinent part:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

Thus, § 1988 only authorizes fee awards to "prevailing parties." <u>Ellis v. Wright</u>, 293 Fed. Appx. 634, 634 n.1 (2008) (<u>citing</u> 42 U.S.C. § 1988).  A party is not a prevailing party until they have prevailed on the merits of at least one of their claims.  <u>Id.</u> (<u>citing</u> <u>Hanrahan v. Hampton</u>, 446 U.S. 754, 758 (1980)).  As Plaintiff cannot prevail on her § 1983 action, she is not entitled to attorney's fees under 42 U.S.C. § 1988.

## VI.    Plaintiff is not entitled to attorney's fees under O.C.G.A. § 13-6-11.

Plaintiff cannot obtain attorney's fees pursuant to state law. O.C.G.A. § 13-6-11, which states:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

"Bad faith is not simply bad judgment or negligence…[it] implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." <u>Rapid Grp., Inc. v. Yellow Cab of Columbus, Inc</u>., 253 Ga. App. 43, 49 (2001) (<u>citing</u> <u>R.B. Vickers v. C.E. Motte</u>, 109 Ga. App. 615 (1964)).  However, "bad faith cannot be prompted by an honest mistake as to one's rights or duties but must result from some interested or sinister motive."  <u>Id.</u> at 49. When bad faith is not an issue

and the only basis for a recovery of attorney fees is either stubborn litigiousness or the causing of unnecessary trouble and expense, an award under O.C.G.A. § 13–6–11 is authorized where the evidence reveals that no bona fide controversy or genuine dispute existed - whether of law or fact, on liability or amount of damages, or on any comparable issue.  Id.  Here, Plaintiff has not specifically plead bad faith, stubborn litigiousness, or causing Plaintiff unnecessary trouble and expense.

## **CONCLUSION**

WHEREFORE, for all the reasons herein, Defendants respectfully requests that this Honorable Court grant his Motion for Summary Judgment, granting judgment as a matter of law to Defendants.

{signature on following page}

Respectfully submitted,

**BUCKLEY CHRISTOPHER, P.C.**[3]


/s/ Taylor W. Hensel
_____
TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
TAYLOR W. HENSEL
Georgia State Bar No. 572754
Attorneys for Defendants

2970 Clairmont Road NE
Suite 650
Atlanta, Georgia 30329
(404) 633-9230 (telephone)
(404) 633-9640 (facsimile)
tbuckley@bchlawpc.com
thensel@bchlawpc.com

---

[3] Counsel for Defendants hereby certifies that this pleading was prepared in Times New Roman font, 14 point, in compliance with Local Rule 5.1.C.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2019, I electronically filed the

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR

SUMMARY JUDGMENT by using the CM/ECF system which will automatically

send email notification of such filing to the following attorneys of record:

Jeff Filopovits, Esq.

**BUCKLEY CHRISTOPHER, P.C.**

/s/ Taylor W. Hensel

_____

2970 Clairmont Road NE
Suite 650
Atlanta, Georgia 30329
(404) 633-9230 (telephone)
(404) 633-9640 (facsimile)
thensel@bchlawpc.com

TAYLOR W. HENSEL
Georgia State Bar No. 572754
Attorneys for Defendants